IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD T. WILLIAMSON, SR.

      Plaintiff,

  v.

LATOYA BROWNFIELD, ALLEGHENY
COUNTY ADULT PROBATION OFFICER;
YVONNE MCKINNON, ALLEGHENENY
COUNTY PROBATION SUPERVISOR;
RAMON R. RUSTIN, ALLEGHENY
COUNTY JAIL WARDEN,

      Defendants.

12cv1274
**ELECTRONICALLY FILED**

Chief Magistrate Judge Lisa
Pupo Lenihan

## **MEMORANDUM ORDER**

### I. **Nature and Posture of Case**

Before the Court is Defendants' April 29, 2013 Motion to Dismiss for Failure to State a Claim (ECF No. 32).

On September 6, 2012, Plaintiff initiated this civil rights lawsuit against the Defendants by his Complaint (ECF No. 3), which was first Amended on October 19, 2012 (ECF No. 7). Defendants filed a Motion for More Definite Statement on February 27, 2013 (ECF No. 22) and Plaintiff's Second Amended Complaint was filed on April 2, 2013 (ECF No. 32), rendering said Motion moot as so Ordered that same day. Defendants' Motion to Dismiss followed on April 29th, and Plaintiff was directed by Order of May 8, 2013 to file either a Third Amended

Complaint or a Response. Following a granted extension, Plaintiff timely filed a Third Amended Complaint on June 21, 2013 (ECF No. 39).

Plaintiff has alleged that as a consequence of a guilty plea to retail theft in Spring 2010, he was sentenced by Allegheny Court of Common Pleas Judges Thomas Flaherty and Beth Ann Lazzara to one year of house arrest, electronic monitoring ("EM"), and probation subject to compliance with the usual requirements of a monitoring anklet, actively pursuing employment and/or educational/vocational training, drug/alcohol compliance, and maintaining a residence and landline (the "EM Program"). Plaintiff was under the supervision of the Allegheny County Probation Department and was to be afforded work, educational and medical release. From May 2010 thru October 2010 he was in compliance with all terms of his EM Program and specifically engaged in employment/education activities – including class attendance. In October, 2010 he changed residence addresses and was reassigned to a different Probation Officer, Defendant Brownfield. Plaintiff alleges that, in stark contrast to his prior Probation Officer, Brownfield denied him any/all the approvals he needed to be allowed to leave his residence for his employment interviews, education activities, and related appointments. He brought these unreasonable and/or blanket denials to the attention of Brownfield's supervisor, Defendant McKinnon, who instructed Plaintiff to send subsequent requests to her, which Plaintiff did, but he alleges that they continued to be denied all through October. Plaintiff identifies three (3) employment/education activity/organization supervisors/employees and/or potential employers as personally contacting Defendant McKinnon regarding her department's continuing denials of permission for Plaintiff to attend activities requisite to his ability to comply with the terms of his EM Program or obtain employment. In November, the lawyer retained by Plaintiff, having

2

reviewed the case information, filed a contesting Motion. Said Motion was filed on November 12, 2010 with sentencing Judge Flaherty, who scheduled a hearing for after the Thanksgiving holiday – on December 3rd.

Less than a week after the Court Motion was filed, on November 18th, Defendant McKinnon contacted Plaintiff on his residence landline and scheduled him to come in to her Parole Unit on November 23rd, at which time Plaintiff found himself summarily arrested by Allegheny County Sheriff's Officers and taken to the Allegheny County Jail for purported probation violations. In particular, the bases asserted by the Probation Department on the Detainer for Plaintiff's arrest were: whereabouts unknown/uncertain, drug/alcohol involvement, and other failure to comply with probation terms. Plaintiff maintains that these allegations were not only without cause, but deliberately false and retaliatory. He was held in jail.

At the December 3rd hearing - attended not by the Probation Defendants but by Plaintiff's lawyer and Court Liason Officer Robert O'Brien – the Liason testified that the Probation Unit had provided no Affidavit of Probable Cause or other support for Plaintiff's arrest. Judge Flaherty and Judge Lazarra both executed Orders on December 6, 2010 requiring that Plaintiff be released to Electronic Monitoring staff. Also on December 6, Plaintiff had a Pennsylvania Board of Probation and Parole Gagnon I/Probable Cause Hearing. Neither McKinnon nor Brownfield from the Probation Department was presen.; Plaintiff's attorney was telephoned by the hearing examiner and a Finding of Fact was issued concluding that there was no probable cause for any of the allegations/violation and an order was issued directing that the Detainer to be lifted at the discretion of the Court Liason O'Brien.

Plaintiff maintains that at the time of the Court Order requiring that he be released on

3

December 6th, he still had a residence and landline; but that Defendants purposefully delayed his release/ continued his incarceration. Plaintiff asserts that Defendants' constitutional abuses caused him to be unable to retain his residence (specifically because he could not pay his rent because had been denied access to his employment prospects and educational/training activities for months, and because Plaintiffs' arrangement with his landlord was that he would provide maintenance services/do work around the residence(s) to supplement any rental payment shortfall - as he could not meet his rental conditions while Defendants had him unjustly incarcerated – he lost his residence) or his landline. This then disqualified Plaintiff from the EM Program, and he was required to serve the remaining approximate one-third of his sentence in jail (from November 23, 2010 when he was arrested without cause through March 18, 2011, *i.e.*, 126 days).1 Plaintiff alleges that Defendant Warden refused to release Plaintiff/caused his incarceration to continue despite Plaintiff's submitting "grievances . . . concerning the issues above" and "exhausting ACJ institutional administrative remedies". He further alleges that the orders for his release were sent to the Warden and those order were ignored.

Plaintiff 's *pro se* Complaints provide significant troubling factual specificity in support of his allegations. He also specifically alleges deprivations, under Section 1983, of multiple constitutional rights, including claims for violations of his First, Fourth, Eighth, and Fourteenth Amendment rights, as well as State law claims for abuse of process, false arrest and false imprisonment. Defendant's Brief in Support of Motion to Dismiss argues entitlement to

---

1 Plaintiff's counsel filed a Habeas Corpus Petition with the Criminal Court on December 22, 2010, and on January 12, 2011 Judge Flaherty held a hearing and reissued the December 6, 2010 Order requiring Plaintiff's release to EM staff on condition of residency, but Plaintiff was unable to meet this requirement by that time.

dismissal as a matter of law in that (1) Judge Flaherty's acts and those of the Hearing Officer in connection with Plaintiff's November 23, 2010 incarceration –in response to their Detainer and the purported probation violation basis set forth therein– constituted an intervening cause; (2) they are entitled to absolute *and* qualified immunity; and (3) insufficient personal involvement is alleged as to the Defendant Warden Rustin.

## II. **Standard of Review**

A Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6) is an appropriate means of challenging the legal sufficiency of the Complaint. See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987). It is to be granted only where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). In Iqbal, the Supreme Court further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Shortly therafter, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard as requiring that civil complaints set out "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler, 578 F.3d at 210 (quoting Iqbal). And it set forth the following two-prong test:

> First, the factual and legal elements of a claim should be
> separated. The District Court must accept all of the complaint's
> well-pleaded facts as true, but may disregard any legal

> conclusions. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a 'plausible claim for relief.' In other words,
> a complaint must do more than allege the plaintiff's entitlement to
> relief. A complaint has to 'show' such an entitlement with its
> facts. . . . This 'plausibility' determination will be 'a context-
> specific task that requires the reviewing court to draw on its
> judicial experience and common sense.'

Fowler, 578 F.3d at 210-11 (citations omitted).

The Court also observes that *pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations omitted); Haines v. Kerner, 404 U.S. 519 (1972).

### III. Conclusion

Viewed in light of the forgoing liberal pleading standards, and with all due consideration given to Plaintiff's *pro se* status, and taking as true all of Plaintiff's allegations, this Court finds that the circumstances underlying the cause of action, as reflected in the factual allegations of the Complaint, are more than sufficient to plausibly allege one or more cause of action under Section 1983 as against each of the Defendants. The Court observes that whether or not Defendants had probable cause or other legitimate basis for their alleged roles in (1) denying Plaintiff employment/education activity approvals requisite to his continued compliance with/participation in the EM program; (2) having Plaintiff arrested and incarcerated (a) after Plaintiff complained about those denials and his counsel filed a related Motion with the Court and (b) before the scheduled, related Court hearing; (3) purposefully delaying Plaintiff's release from jail/continuing his incarceration in violation of a Court Order finding no probation violation or other basis for his arrest and requiring his release; and/or (4) causing Plaintiff's

inability to maintain his residence and thus to continue in compliance with the EM program by incarcerating him without probable cause, are questions of material fact. The Court also observes that none of the actions taken by the Criminal Court or Hearing Officer as set forth in the underlying pleadings constitutes an "intervening act" to the harms Plaintiff alleges, warranting dismissal of the claims against Defendants. Defendant's citation to Barr v. County of Clarion, 417 Fed. Appx. 178 (3d Cir. 2011), in which the Court erred in its entry of a sentencing order (unintentionally omitting an additional probation period following incarceration period for a probation violator, and amending the order without notice belatedly) is inapposite to, *e.g.*, Defendants' assertion that Judge Flaherty's acts constituted an intervening cause as to any inappropriate conduct or perjury on the part of the Probation Department Defendants because he held hearings and decided issues of credibility. See Brief in Support at 9. Nor are Defendants entitled to absolute or qualified immunity under the facts alleged. The doctrine of absolute immunity has no place here.2 As to qualified immunity, following the two step analysis set forth in Saucier v. Katz, 533 U.S. 1919 (2001), the Court finds that the facts alleged, when taken as true, state conduct in clear violation of specified constitutional rights. Plaintiff is entitled to an opportunity to further develop the record through the discovery process. Finally, as to the personal involvement of Defendant Warden Rustin, at this preliminary

---

2 In a limited number of circumstances, government officials are entitled to absolute immunity from a suit for damages. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). The grant has been used "quite sparing," and is confined to official functions in which the exposure to liability would invariably impede the official in the performance of his or her duties (*e.g.*, judges or prosecutors when acting in a judicial role). Forrester v. White, 484 U.S. 219, 223–24 (1988). Compare Wilson v. Rackmill, 878 F.2d 772 (3d Cir. 1989) (holding probation and parole officers entitled to absolute immunity only as to adjudicatory duties and trial court erred where complaint also alleged executive/administrative and investigative capacities, as to which only

pleading stage and given his *pro se* status, Plaintiff has set forth sufficient allegations to survive the Motion to Dismiss filed by Defendants. It is possible that he may prove, for example, that the Warden received the Order for his discharge and, for whatever reasons, chose to ignore them. While Defendant Rustin may be entitled to dismissal on a motion for summary judgment, it is premature to do so at this point. Accordingly, said Motion to Dismiss will be denied.

**IV. Order**

**AND NOW,** this 27th day of June, 2013, after due consideration to Defendants' Motion to Dismiss ( ECF No. 32), **IT IS HEREBY ORDERED** that said Motion to Dismiss is DENIED.

Lisa Pupo Lenihan
United States Chief Magistrate Judge

cc: Counsel of record

    Leonard T. Williamson, Sr.
    1601 Brighton Rd.
    Pittsburgh, PA  15212

---

potential immunity was qualified , good-faith immunity).