IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD T. WILLIAMSON, SR.

    Plaintiff,

v.

LATOYA BROWNFIELD, ALLEGHENY
COUNTY ADULT PROBATION OFFICER;
YVONNE MCKINNON, ALLEGHENY
COUNTY PROBATION SUPERVISOR;
RAMON R. RUSTIN, ALLEGHENY
COUNTY JAIL WARDEN,

    Defendants.

12cv1274
**ELECTRONICALLY FILED**

Chief Magistrate Judge Lisa
Pupo Lenihan

## **MEMORANDUM OPINION AND ORDER**

### I. **Nature and Posture of Case**

Before the Court is Defendants' August 19, 2013 Motion to Dismiss Plaintiff's Fourth Amended Complaint for Failure to State a Claim (ECF No. 53). For reasons set forth below, the Motion will be granted solely as to dismissal of the official capacity claims (pursuant to the parties' Stipulation and the Political Subdivision Tort Claims Act) and denied as to its remainder.

As fully set forth in this Court's Memorandum Order of June 27, 2013 denying Defendants' prior Motion to Dismiss (the "June 2013 Memo Order") (ECF No. 40), Plaintiff initiated this civil rights lawsuit against the Defendants *pro se* in September, 2012, amended in

1

October, and in response to Defendants' Motion for More Definite Statement, amended again in April, 2013. Defendants' Motion to Dismiss followed and Plaintiff filed, in accordance with this Court's direction, a Third Amended Complaint in June. The Court's June, 2013 Memo Order denied the Motion to Dismiss and Plaintiff obtained counsel and filed a Fourth Amended Complaint on August 2, 2013, and the case was referred to mediation by Order of that same day (ECF No. 52). Defendants filed the pending Motion to Dismiss the Fourth Amended Complaint shortly thereafter, raising the "limited issue" that "Plaintiff's Section 1983 suit fails under <u>Heck v. Humphrey</u>", and also asserting that Plaintiff's Count VI raises claims for false imprisonment which fail because Defendants have immunity under the Pennsylvania Political Subdivision Torts Claims Act ("PSTCA"). In October, Defendants Brownfield and McKinnon also filed a Motion to Dismiss the claims against them in their official capacities (ECF No. 61) and the parties Stipulated on October 23, 2013 that those claims were dismissed with prejudice (ECF No. 65).

As also set forth in the June, 2013 Memo Order: Plaintiff has alleged that following a guilty plea to retail theft in Spring 2010, he was sentenced by Allegheny Court of Common Pleas Judges Flaherty and Lazzara to one year of house arrest, electronic monitoring ("EM"), and *probation* subject to the usual requirements of a monitoring anklet, actively pursuing employment and/or educational/vocational training, drug/alcohol compliance, and maintaining a residence and landline (collectively the "EM Program"). <u>See also</u> Defendants' Brief in Support at 1 (ECF No. 54)(noting that Plaintiff was "sentenced to Electronic Monitoring . . ., House

2

Arrest and Probation").[1] Plaintiff was under the supervision of the Allegheny County Probation Department *and was to be afforded work, educational and medical release.* From May 2010 thru October 2010 he was in compliance and engaged, with all requisite approvals from his Probation Officer, in employment/education activities. In October, 2010 he changed residence addresses and was reassigned to Probation Officer Brownfield. Brownfield then unilaterally denied him the approvals he needed for employment and education activities. Brownfield's supervisor, Defendant McKinnon, continued to deny approvals throughout October. Several of Plaintiff's employment/education activity/organization supervisors/employees and/or potential employers contacted Defendant McKinnon unsuccessfully.[2] In November, the criminal lawyer retained by Plaintiff, having reviewed the case information, filed a contesting Motion "challenging the conduct of the ... Defendants", and sentencing Judge Flaherty scheduled a hearing for December 3rd. See Defendants' Brief in Support at 2.

*Less than a week after the Court Motion was filed Defendant McKinnon contacted Plaintiff on his residence landline* and scheduled him to come in to her Parole Unit on November 23rd, at which time Plaintiff was summarily arrested and jailed for purported probation violations such as: *whereabouts unknown/uncertain,* drug/alcohol involvement, and other failure to comply with probation terms. Plaintiff maintains that these allegations were not only without cause, but deliberately false and retaliatory. He was held in jail.

---

[1] Cf. Plaintiff's Fourth Amended Complaint, clarifying that he was sentenced through the Intermediate Punishment Program to nine months EM house arrest concurrent with twelve months probation.

[2] See Plaintiff's Fourth Amended Complaint at para. 26 (identifying three individuals who contacted Defendant McKinnon).

3

At the December 3rd hearing - attended not by the Probation Defendants but by Plaintiff's lawyer and Court Probation Liason Officer Robert O'Brien – the Liason *testified that the Probation Unit had provided no Affidavit of Probable Cause or other support for Plaintiff's arrest. Judge Flaherty and Judge Lazarra both executed Orders on December 6, 2010 requiring that the Detainer be lifted and Plaintiff be released from jail to the Electronic Monitoring Program.* See Plaintiff's Response in Opposition at 2; see also Plaintiff's Fourth Amended Complaint at para. 43 ("These Orders were sent directly to the Warden . . . ."); id at para. 44 (stating that Court Liaison advised Plaintiff's counsel he "would be released in forty-eight hours"). *That same day, Plaintiff had a Pennsylvania Board of Probation and Parole Gagnon I/Probable Cause Hearing*, at which neither Probation Department Defendant was present; Plaintiff's attorney was telephoned by the hearing examiner and *a Finding of Fact was issued concluding that there was no probable cause for any of the allegations/alleged violations and that the detainer could be lifted.* See Defendants' Brief in Support at 2; see also Plaintiff's Fourth Amended Complaint at para. 48.

Plaintiff maintains that at the time of the Court Orders requiring he be released and returned to the EM Program on December 6th, he still had a residence and landline; but that Defendants purposefully delayed his release/ continued his incarceration. As he was not released as ordered, Plaintiff's counsel filed a Habeas Corpus Petition with the Criminal Court on December 22, 2010, indicating that he was then (as a result of his November 23rd arrest for alleged probation violations found groundless, and his continuing incarceration in violation of the Court's December 6th Orders) being wrongfully imprisoned. The Court notes that this was the challenge of said Petition – i.e., *neither Plaintiff's original conviction nor his sentence, but*

4

*his continued imprisonment in violation of the December 6 Court Orders directing his release.*
See Petition for Writ of Habeas Corpus. On January 12, 2011 Judge Flaherty held a hearing and reissued the December 6, 2010 Order requiring Plaintiff's release to EM staff (on condition of residency as required under the EM Program), but Plaintiff was unable to meet this requirement by that time. See Plaintiff's Response in Opposition at 3 (ECF No. 55) ("Defendants do not address any of their unconstitutional conduct up through January 12, 2011, which said conduct was the proximate cause of his detention from January 12, 2011 through March 28, 2011.")

Specifically, Plaintiff asserts that Defendants' constitutional abuses caused him to be unable to retain his residence – because both (1) he could not pay his rent because had been denied access to his employment prospects and educational/training activities for months, and (2) Plaintiffs' arrangement with his landlord was that he would provide maintenance services/do work around the residence(s) to supplement any rental payment shortfall. When he could not meet his rental conditions while Defendants had him unjustly incarcerated, he lost his residence and landline. This then disqualified Plaintiff from the EM Program, and *he was required to serve the entire remaining approximate one-third of his sentence in jail (from November 23, 2010 when he was arrested without cause through March 18, 2011, i.e., 126 days)*. Plaintiff alleges that Defendant Warden refused to release Plaintiff/caused his incarceration to continue despite Plaintiff's submitting "grievances . . . concerning the issues above" and "exhausting ACJ institutional administrative remedies".

## II. Standard of Review

A Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6) is an appropriate means of challenging the legal sufficiency of the Complaint. See, e.g., Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987). It is to be granted only where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). In Iqbal, the Supreme Court further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Shortly therafter, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard as requiring that civil complaints set out "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler, 578 F.3d at 210 (quoting Iqbal). And it set forth the following two-prong test:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. . . . This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

Fowler, 578 F.3d at 210-11 (citations omitted).

## III. Analysis

### A. Heck Analysis

Defendants assert that Plaintiff's entire "Section 1983 suit", consisting of claims in Counts I through V (for First, Fourth, Eighth and Fourteenth Amendment violations and Malicious Abuse of Process), is barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994), which held that "to recover damages for alleged unconstitutional conviction or imprisonment, or from other harm caused by actions *whose unlawfulness would render a conviction or sentence invalid*, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus." Defendants' Brief in Support at 4. Defendants observe that the "rationale behind Heck is that a Section 1983 plaintiff cannot collaterally attack the consequences of his criminal court proceeding." Id. at 5. In that, they are correct. Defendants proceed thereafter, however, to go astray. See id. at 5-8.

As argued in Plaintiff's Response in Opposition, the primary cases relied upon by Defendants, *i.e.*, Williams v. Consovoy, 453 F.3d 173 (3d Cir. 2006) (re-arrest for uncontested parole violations) and Connolly v. Arroyo, 293 Fed. Appx. 175 (3d Cir. 2008) (parole revocation upheld on multiple occasions, action dismissed as frivolous), pertain to *denials of parole* to individuals sentenced to incarceration (*i.e.*, continued incarceration vs. release) and are

7

inapposite. Defendants would like to comingle parole denial cases with probation cases.[3] But the law simply does not permit this (nor should it, in light of the jurisprudential underpinnings, *i.e.*, that the rule in Heck derived from the law of *habeas corpus*). Cf. Defendants' Reply Brief in Support at 5 ("The Third Circuit requires is that [*sic*] Section 1983 claims brought by parolees claiming illegal revocation of their parole must comply with Heck."). The Court thus considers any applicability of Heck to the case *sub judice* as follows:

First, in accordance with Jackman v. Smith, 2006 WL 2190277, *1 (3d Cir. Aug. 3, 2006) (reversing dismissal of civil rights case under Heck where District Court "problematically" read multiple allegations as single claim, rather than consider *which* claims might be subject to Heck's bar for "harm . . . whose unlawfulness would render the conviction or sentence unlawful") (citing Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998)), the Court does not consider Plaintiff's Section 1983 action *in toto* but parses the individual causes of action against Heck's test of whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487. In so doing, the Court concurs with the analysis of Plaintiff's Response in Opposition, and concludes that no Count other than Count II (4th Amendment claims) could require further consideration under Heck; all other counts falling outside its purview. See Plaintiff's Response in Opposition at 4 (noting free speech claim (retaliatory denials of windows for education/employment, retaliatory arrest/detention); unconstitutional imprisonment (*i.e.* in violation of the December Order) claim;

---

[3] Defendants' third purportedly guiding case, Bolden v. Winchester, 324 Fed. Appx. 146 (3d Cir. 2009) (finding action challenging confinement brought by probation violator imprisoned for drug use frivolous), is not relevant to the present facts.

8

and claims regarding the issuance and execution of his probation detainer); see also Plaintiff's Fourth Amended Complaint.[4]

As to Count II (claim including unreasonable seizure/arrest/confinement), the Court observes the direct applicability and sound reasoning of the Court of Appeals in the governing case of Vickers v. Childs, 2013 WL 3481767 (3d Cir. July 3, 2013). More specifically, in Williams, the Court of Appeals for the Third Circuit held that Heck extends where the Plaintiff's action implicates his sentence - the fact or duration of his incarceration (as by, for example, a challenge to a denial of parole, *i.e.*, to a Parole Board determination regarding the *duration* of confinement).[5] But the difference between (a) the non-custodial EM Program in which Plaintiff was placed and (b) the subsequent incarceration underlying this action is that of a *condition* of confinement. His constitutional challenges to his arrest (for alleged but unsupported probation violations) and incarceration do not implicate the validity of either his criminal conviction or his sentence under Heck, and it is not subject to Heck's favorable outcome rule. In Vickers, the Third Circuit expressly held that Heck's favorable termination rule did not apply to an action

---

[4] Plaintiff's reference in Count III to an Eighth Amendment violation because he was imprisoned "beyond the termination of his sentence" may be read, in the context of his Complaint, to refer to the period between the Court Order for return to the EM Program on December 6th and the subsequent date by which he acknowledges inability (allegedly caused by Defendants' unconstitutional conduct) to meet the conditions of his sentence. Similarly, his reference in Count IV to a Fourteenth Amendment violation by "altering the terms of his sentence" may certainly be read, again in context, to refer to *conditions* rather than *length* of sentence. See discussion *infra*. Compare Defendant's Reply Brief in Support at 4.

[5] See Williams, 453 F.3d 173 ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole."); Connolly, *supra*, at *2 (noting that claims such as plaintiff's were "not cognizable in a section 1983 action on the basis of Heck, because the alleged improper denial of release on parole plainly implicates the validity of continued confinement" on his sentence).

*challenging the condition* of incarceration, *i.e.*, where the plaintiff filed a Section 1983 claim based on his detention, and his being forced to serve his sentence in county prison rather than in a non-custodial SLAP program despite a Court order directing his release into that program. See Vickers, 2013 WL 3481767, *2 ("The Supreme Court has consistently distinguished between claims that necessarily implicate the fact or duration of confinement . . . and claims that relate only to the conditions of incarceration (which it has not suggested are subject to the favorable termination rule).") (citing Torres, *supra*).[6] See also Plaintiff's Response in Opposition at 6-7 (citing to McBride v. Cahoone, 820 F.Supp. 623 (E.D. Pa. 2011) (in which the Court held that civil rights action - by a plaintiff who pled guilty to theft and was sentenced to house arrest and electronic monitoring and subsequently detained and incarcerated without hearing, for failure to report to his Probation Officer - was a challenge to detention procedures and not subject to Heck)); id. at 8 ("[Plaintiff] has alleged both that the confinement was improper and effectuated through improper procedures.").

Moreover, even if favorable termination under Heck were required, which the Court expressly concludes it was not, the December 6, 2010, direct Orders of the Court of Common Pleas, the Court of competent authority, requiring that Plaintiff be released and returned to the EM Program, may well have met this requirement. On that date, the Court effectively found in

---

[6] Defendants assert that Vickers is inapplicable because it held the plaintiff's action time barred. See Defendants' Reply Brief in Support at 5. But the only reason the statute began to run "without interference" was because the Court concluded the plaintiff's cause of action was *not* subject to Heck's favorable termination prerequisite. The principal holding of Vickers was that the statute accrued because that probation case concerned the conditions of the plaintiff's confinement and, accordingly, did not implicate Heck.

10

Plaintiff's favor on the matter which his counsel challenged, *i.e.*, neither his criminal conviction (resulting from his entrance of a guilty plea) nor his sentence to the EM Program, but rather *the invalidity of his November 23rd arrest and incarceration for alleged probation violations*. And again, on January 12th, when – in contravention of the Court's Orders (and the representation of the Court Liaison) – Plaintiff remained imprisoned, the Common Pleas Court did not deny Plaintiff's *habeas* petition. To the contrary, it again directed his return to the EM Program, and only reiterated conditions standard to that program and with which Plaintiff had been in compliance prior to his allegedly groundless/invalid and allegedly retaliatory incarceration. See Plaintiff's Brief in Opposition at 6-7 (noting that "[i]t is [Plaintiff]'s contention that he should not have been detained by Defendants . . . on November 23" and that the subsequent Court Orders "constitute a judicial finding that the detainer was invalid"). Plaintiff would, of course, have no reason to appeal Court Orders in his favor. Cf. Defendants' Brief in Support at 3 (cataloging Plaintiff's asserted failures to contest the related Court orders or otherwise further contest his November 23, 2010 arrest and continued incarceration).[7] He would have both reason and right to bring plausible constitutional claims for the conduct alleged, and Heck interposes no

---

[7] The Court notes that Plaintiff does not challenge the eventual validity of his continued incarceration for want of residence and landline, as required by the EM Program, but challenges the unconstitutional/wrongful/retaliatory actions of Defendants who, by invalid arrest and subsequent contravention of Court Orders, caused his ineligibility for the EM Program, and resultant continued incarceration. See Plaintiff's Response in Opposition at 3 (citing proximate cause and quoted *supra*); see also Jackman, 2006 WL 2190277, *1, n. 3 (citing Nelson v. Jashurek, 109 F.3d 1421, 145-46 (3d Cir. 1997) (where plaintiff alleged effectuation of lawful arrest in unlawful manner, court did not "see why a judgment in [his] favor would throw the validity of his conviction into doubt").

Cf. Defendants' Brief in Support at 8 ("Judge Flaherty allowed the incarceration to continue [after Plaintiff's *habeas corpus* petition] through the expiration of Plaintiff's sentence. Plaintiff

bar to them.

## B. False Imprisonment Analysis

Defendants observe that Count VI of the Fourth Amended Complaint, for false imprisonment is subject to the PSTCA, 42 Pa.C.S. Section 8541 *et seq.* and that the intentional tort of false imprisonment is one for which the County and its employees are provided blanket "official capacity" immunity. Defendants' Brief in Support at 8-9. They further observe that "[a]ny viable claim for 'false imprisonment' would have to be to the defendants in their individual capacities and it would have to constitute a 'crime, actual fraud, actual malice or willful misconduct.'" Defendants' Reply Brief in Support a 5 (citing City of Philadelphia v. Brown, 618 A.2d 1236, 1238 (Pa. Commw. 1992)). See also Brief in Support of Motion to Dismiss filed by Defendants Brownfield and McKinnon (ECF No. 61) (citing Eleventh Amendment and other basis for dismissal of official capacity claims).

As noted, *supra*, the parties have already stipulated to dismissal of official capacity claims as to Defendants Brownfield and McKinnon. The parties have not so stipulated as to Defendant Ruskin, but Plaintiff's allegations against the Warden, *i.e.*, that he refused to release Plaintiff/caused his incarceration to continue despite the December 6th Court Orders and Plaintiff's subsequent grievances, constitute similarly intentional, as opposed to negligent torts, and so would subject that Defendant, as well, to individual but not official capacity liability. Accordingly, the claims against each Defendant in their official capacity will be dismissed.

## IV. Conclusion

---

never appealed that decision or took any further action at the state law.").

This Court finds Defendants' assertions that the present action, or any portion thereof, should be dismissed under Heck, *supra*, unpersuasive and their case analysis inapposite and/or mistaken. It further finds that, as the Plaintiff has acknowledged by Stipulation in response to the Motion to Dismiss on the Count for false arrest filed by two Defendants, the PSTCA provides official immunity under the allegations of Count VI. As each of Plaintiff's Section 1983 Counts in the Fourth Amended Complaint sets forth a plausible claim for relief meeting the applicable standard of review, but for the dismissal of official capacity claims against the Defendants, *supra*, Plaintiff is entitled to proceed. The Motion to Dismiss will therefore be granted solely as to dismissal of said official capacity claims and denied as to its remainder.

Dated: November 12, 2013

_____
Lisa Pupo Lenihan
United States Chief Magistrate Judge