IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD T. WILLIAMSON, SR. ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 12-1274 |
| ) | |
| v. ) | Chief Magistrate Judge Lisa Pupo |
| ) | Lenihan |
| LATOYA BROWNFIELD, ALLEGHENY ) | ECF No. 78 |
| COUNTY ADULT PROBATION OFFICER; ) | |
| YVONNE MCKINNON, ALLEGHENY ) | |
| COUNTY PROBATION SUPERVISOR; ) | |
| RAMON R. RUSTIN, ALLEGHENY ) | |
| COUNTY JAIL WARDEN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I. Procedural and Factual History**

Before the Court is Defendants' May 29, 2014 Motion for Summary Judgment (ECF No. 78) as to Plaintiff's Fourth Amended Complaint (ECF No. 50). For reasons set forth below, the Motion will be granted.

As fully set forth in this Court's Memorandum Order of November 12, 2013, granting in part Defendants' Motion to Dismiss (the "November 2013 Memo Order") (ECF No. 66), Plaintiff initiated this civil rights lawsuit against the Defendants *pro se* in September, 2012, amended in October, and in response to Defendants' Motion for More Definite Statement, amended again in April, 2013. Defendants' first Motion to Dismiss followed and Plaintiff filed,

1

in accordance with this Court's direction, a Third Amended Complaint in June. The Court's June, 2013 Memo Order denied the Motion to Dismiss and Plaintiff obtained counsel and filed a Fourth Amended Complaint on August 2, 2013. The case was referred to mediation by Order of that same day (ECF No. 52) – which mediation was unsuccessful. Defendants filed a Motion to Dismiss the Fourth Amended Complaint raising the limited issue that Plaintiff's Section 1983 suit failed under Heck v. Humphrey, and asserting that Plaintiff's Count VI claims for false imprisonment failed because Defendants have immunity under the Pennsylvania Political Subdivision Torts Claims Act ("PSTCA"). Defendants Brownfield and McKinnon also filed a Motion to Dismiss the claims against them in their official capacities (ECF No. 61) and the parties Stipulated on October 23, 2013 that those claims were dismissed with prejudice (ECF No. 65). Thereafter, on November 12, 2013, this Court granted dismissal of the official capacity claims of Count VI against all Defendants, in light of the Political Subdivision Tort Claims Act's provisions, but denied the Defendants' last Motion to Dismiss in its other respects. (ECF No. 66).

In sum, since the filing of his initial Complaint more than two years ago, the Court has afforded Plaintiff every leniency to his *pro se* status and, continuing after his retention of counsel, every opportunity to undertake discovery, provide evidence and sufficiently establish material fact questions supportive of his allegations that the Defendants violated his Constitutional or other rights. He has not done so. Cf. June 27, 2013 Memorandum Opinion at 7 (concluding that Plaintiff was "entitled to an opportunity to further develop the record through the discovery process").

The relevant factual background, as now more accurately reflected and documented in the parties' summary judgment filings, is as follows:

Following two separate convictions of retail theft in Spring and Summer 2010, Plaintiff was sentenced by Allegheny Court of Common Pleas Judges Lazzara and Flaherty to separate but similar and concurrent sentences – each allowing his participation in the "Intermediate Punishment Program" (the "IP" program) - with terms of nine to twelve months, including periods of house arrest, electronic monitoring ("EM"), and probation subject to the usual requirements of a monitoring anklet, actively pursuing employment and/or educational/vocational training, drug/alcohol compliance, and maintaining a residence and landline (collectively the "EM Program" – a form of the intermediate punishment sometimes permitted complying criminals, under the IP Program umbrella). In acknowledging and agreeing to comply with IP Program participation (rather than incarceration), Plaintiff received and signed documents including the EM Program rules and regulations, which expressly set forth the liberty restrictions, compliance (including reporting/monitoring) requirements, the drug and alcohol prohibitions and monitoring conditions, and alternative consequences to non-compliance (including incarceration for the duration of his original sentence(s)). See Defendants' Memorandum in Support of Motion for Summary Judgment (ECF No. 81); Defendants' Exhibits in Support of Motion for Summary Judgment (hereafter "Defendants' Exhibits") at Ex. F (ECF No. 80-6) (Adult Probation Office forms). Electronic monitoring was installed at his residence in August, 2010.

Plaintiff was under the supervision of the Allegheny County Probation Department and was assigned to Probation Officer Blankenbicker. He began participation in the EM Program

and, as reflected in the contemporaneous electric monitoring logs (the "EM Logs") and other documents now of record, he was repeatedly in violation of the terms of his IP Program. More specifically, Plaintiff was away from his residence without prior approval; he failed to comply with curfews when issued approval for specific windows of leave; and he failed to provide drug testing specimens despite repeated requests from his Probation Officer and protracted opportunities to do so (see, e.g., records of September 20-22 and September 29, 2010 (noting that an oral swab was positive for amphetamines)). See Defendants' Concise Statement of Facts (ECF No. 79) at 3-6; Defendants' Exhibits, Ex. C & J (ECF No. 80-3, 80-10) (BI Inc.'s "Compressed Daily Alerts" setting forth monitoring reports)  In accordance with the terms of the EM Program, Officer Blankenbicker restricted Plaintiff's windows of leave in consequence. Compare Plaintiff's Complaints and other pleadings alleging that he was in compliance with all terms of the EM Program.

In October, 2010 Plaintiff changed residence addresses (the record suggests that Plaintiff's continuing unemployment and consequent financial situation necessitated this change of residence to the "Young Hotel"). As a result of his relocation, Plaintiff was reassigned to Probation Officer Brownfield on October 21st. Shortly thereafter, the Probation discussed with Williamson his failure to engage in classes, job training or employment during his first two months' probation, and the supervision requirements he was neglecting. See Defendants' Concise Statement of Material Facts at 8-9; see generally Defendants' Exhibits. Plaintiff continued his pattern of frequent EM Program violations. More specifically, he continued to leave his residence without prior approval, to fail to obtain timely prior approvals, to fail to meet return requirements when granted a window of leave, and to fail to provide urine samples for

4

drug screening. See Defendants' Memorandum in Support of Motion for Summary Judgment at 6-11; Defendants' Exhibits at Ex. C (ECF No. 80-3). And Defendants Brownfield and McKinnon, as did Probation Officer Blankenblick, exercised discretion in instituting short windows of leave restriction/prohibition in consequence.[1] Plaintiff was directed to report to the Adult Probation Department, which he did on November 8th, at which time he was counseled regarding his repeated violations, the Program rules were reviewed and re-signed, Plaintiff again failed to provide a urine sample for drug screen on request, and walked out of the meeting prior to its conclusion. See Defendants' Concise Statement of Material Facts at 10.[2] His program violations did not abate.

On November 12, 2010 Plaintiff's lawyer filed a Motion to Modify and Reduce Sentence "challenging the conduct of the . . . Defendants", and Judge Flaherty scheduled a hearing for December 3rd. In the interim, Plaintiff's EM Program violations continued and he was directed to return to the Parole Unit on November 23rd, at which time he tested positive for cocaine (on

---

[1] The Court notes that despite his previous allegations that Defendants Brownfield and McKinnon unilaterally and improperly denied him approvals for employment and education activities and that several employment/education activity/organization supervisors/employees and/or potential employers contacted Defendants in unsuccessful objection, Plaintiff has failed to provide supportive evidence. Compare, e.g., Defendants' Exhibits at Ex. C (ECF No. 80-3) (including multiple log "event" notes of telephone conversations between Probation Office and job search/re-entry programs regarding Plaintiff's leaves and violations). Moreover, Plaintiff has now "concede[d] and waive[d]" any claimed civil rights violations relating to alleged denials of window requests. See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (ECF No. 83) at 5; see also Defendants' Memorandum in Support of Motion for Summary Judgment at 7 ("Discovery also established an exhaustive factual basis for why Williamson was denied windows of liberty.").

[2] Plaintiff's response to these and other extensive factual assertions and supportive document regarding his violation of terms of his conditional monitoring program is to dismiss them as "immaterial". See Plaintiff's Response to Defendants' Concise Statement of Material Facts

both the original and the repeated urine testing).  See Defendants' Concise Statement of Material Facts at 14; see generally Defendants' Exhibits.  An Adult Probation Detainer was issued by Defendant McKinnon identifying as its basis Plaintiff's "failure to comply with rules of E.M." and "whereabouts unknown/unclear".  See Plaintiff's Response to Defendants' Concise Statement of Material Facts, Ex. 7 (ECF No. 82-8) (Detainer); see also, *supra* (noting Plaintiff's repeated absences from residence without approval (*i.e.*, his departures from the "whereabouts known" monitoring field, and failures to timely return from windows of leave).  And Plaintiff was accordingly transferred to the Allegheny County Jail.  See discussion, *supra*, regarding terms of IP and EM Program participation and related Exhibits.  Plaintiff continues to allege that these actions were unwarranted and in retaliation for his Motion for Modification.

At the December 3rd hearing scheduled for Plaintiff's Motion for Modification –attended by Plaintiff's lawyer and Court Probation Liaison Officer Robert O'Brien (the documents of record indicate Defendants had not received notice) – Judge Flaherty issued an Order stating: "No action taken.  [Defendants'] Detainer lifted and [Williamson] is to resume I.P. sentence A.S.A.P."  See Plaintiff's Response to Defendants' Concise Statement of Material Facts, Ex. 9 (ECF No. 82-10).  Three days later, on December 6th, Judge Flaherty directed to the Warden of the ACJ, Defendant Rustin, that the Detainer be lifted and Plaintiff be released from jail to the Electronic Monitoring Program.  See Plaintiff's Response to Defendants' Concise Statement of Material Facts, Ex. 11 (ECF No. 82-12) (Form for "Lifting of Detainer" from J. Flaherty to ACJ Warden noting "Please lift detainer at above information.  [Williamson] to be released to E.M. staff.")  That same day, Plaintiff had a Pennsylvania Board of Probation and Parole Gagnon

---

(ECF No. 82).

I/Probable Cause Hearing, at which the hearing officer concluded that the detainer could be lifted in "the discretion of the Court Liaison O'Brien".  See Plaintiff's Response to Defendants' Concise Statement of Material Facts, Ex. 14 (ECF No. 82-15) (Gagnon I Violation Hearing Disposition Report referencing sentencing J. Flaherty and including Finding of Fact that "Detainer can be lifted at discretion of Court Liaison O'Brien"); Defendants' Exhibits, Ex. T (ECF No. 80-20) (same Report form referencing J. Lazzara).  Cf. id., Ex. L (ECF No. 80-12) (December 1, 2010 Gagnon I IPP and Probation Violation Report for Hearing Officer).

The contemporaneous and other documentation now of record indicates that the Probation Office Defendants were then in communication with said Court Liaison O'Brien regarding Plaintiff's return to the EM Program, and to ascertain his residence status in order to coordinate Plaintiff's transfer from incarceration, as is the procedure for those serving a criminal sentence under a conditional IP Program such as electronic monitoring.  See Defendants' Exhibits, Ex. E (ECF No. 80-5) (Deposition testimony of McKinnon regarding related procedures of EM Program, including verification of residence, reinstallation of field monitoring device at residence, and placement of monitoring bracelet on individual prior to release from prison to EM supervision).  In addition, the record reflects that within days of the December Court directives, the Probation Office Defendants contacted Plaintiff's landlord at the Young Hotel and were told by the property owner that Plaintiff was in default on his rent and would not be welcome back to the Hotel on release.  See id., Ex. C (ECF No. 80-3) (including log event note re communication with landlord).[3]  Subsequent communications with the Court

---

[3] See also Defendants' Exhibits, Ex. W (ECF No. 80-23) (July 18, 2013 Affidavit of Don Young attesting that Plaintiff had paid no rent for October or November and that he would not have

7

Liaison indicate the Defendants' attempts to address this obstacle with the Court, including inquiries as to whether, *e.g.,* Plaintiff could be placed in "alternative housing". See generally Defendants' Concise Statement of Material Facts at 17-19; Defendants' Exhibits. Plaintiff maintains that Defendants, including Warden Rustin, ignored the Court Order and purposefully delayed his release/continued his incarceration.

Plaintiff asserts that at the time of the Court Orders requiring he be released and returned to the EM Program on December 6th, he still had a residence and landline. See Plaintiff's Response to Defendants' Concise Statement of Material Facts, Ex. 20 (ECF No. 82-21) (Notice to Quit and Demand for Possession form from landlord Young dated November 22, 2010, indicating that Plaintiff would be evicted for nonpayment effective December 22, 2010 and that if he worked "off the balance" he could "stay"). Plaintiff's counsel filed a *habeas corpus* Petition with the Criminal Court on December 22, 2010, indicating that he was being wrongfully imprisoned in violation of the December 6th Court Orders. See Defendants' Exhibits, Ex. X (ECF No. 80-24) (Petition for Writ of Habeas Corpus).[4] On January 12, 2011 Judge Flaherty held a hearing and issued an Order that Plaintiff was "to secure residency prior to being released from ACJ. To be released on Electronic Monitoring only. If no residency is provided [, Williamson was] to remain in ACJ until March 28, 2011". See id., Ex. Y (ECF No. 80-25); see also id. Ex. Z (ECF No. 80-26) (notice to Warden). Plaintiff was unable to meet the

---

been allowed to stay in the apartment in December 2010 or thereafter).

[4] Documentation provided in connection with Plaintiff's *habeas* Petition did not include any evidence of lease, payments or current residence, or even any express representations thereof. See also generally Plaintiff's Exhibits to his Response to Defendants' Concise Statement of Material Facts (ECF No. 82).

requirement. And he remained in the Allegheny County Jail through the end of his retail theft sentence in March 28, 2011.

**II. Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial". Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 538 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251–52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable ... or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249–

50. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

**III. Analysis**

As discussed in detail, *supra*, Plaintiff has – subsequent to the entry of evidence – abandoned any claim that the Probation Officer Defendants violated his rights in restricting or denying him windows of liberty during his time under their supervision in the EM Program. In that the Defendants had both discretionary authority, and clear and legitimate bases for taking the above-detailed actions in response to Plaintiff's chronic violations of the terms of his conditional participation in an Intermediate Punishment Program, such claims could not be maintained.

For the same reasons (*e.g.*, Plaintiff's markedly frequent and varying program violations of record), Plaintiff cannot continue to maintain claims that Defendants violated his rights in issuing a November 23, 2010 Detainer on the basis of documented, extensive EM Program violations which, by the terms of his agreement, could subject him to loss of program privileges and incarceration. Compare Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 9 (asserting "sufficient evidence by which a jury could conclude that Defendants'" requirement that Plaintiff report to the Probation Office again on November 23rd and their issuance of a detainer were in retaliation for his Motion for Modification).

Finally, Plaintiff's claims that Defendants maliciously proceeded with a Gagnon Hearing for violations, and willfully ignored and violated the December Court Orders when they failed to

release him from incarceration also cannot reasonably withstand the record now before the Court. To the contrary, the evidence is that the Defendants responded to the Allegheny County Court Orders and attempted to work with the Court Liaison in returning Plaintiff to participation in the EM Program, subject to the requirements of that program. Far from reflecting the "deliberate indifference" Plaintiff alleges, Defendants' actions were fully consistent with the Court's Orders that Plaintiff be returned to the IP Program, that he be released to the EM staff, and that he be released to an identified (*i.e.*, monitorable) residence. Neither the variance in the language of the Court's Orders, nor the ultimately fuller recitation of particular requirements of the EM Program in January, 2011 following Plaintiff's *habeas corpus* petition, are significant to this decision. Each Order plainly entailed that Plaintiff's release from incarceration be accompanied by his return to the requirements of the conditional program being afforded him in its stead; no subsequent Order overrode the terms of Plaintiff's original sentencing(s) on retail theft (*i.e.* IP sentencing subject to compliance with rules and procedures). Cf. Defendants' Exhibits, Ex. DD (ECF No. 80-30) (Affidavit of ACJ Intake Administrator David Hungerman, observing that on December 3rd J. Flaherty entered an order that Williamson resume his I.P. sentence and on December 6th he entered "substantially the same order" directing that Williamson be released to EM staff).

It is unfortunate that Plaintiff's continuing unemployment, his violations of the monitoring and drug conditions of his alternative sentence, and his not-unrelated residency and landlord difficulties prevented his return to the EM program, and that he therefore served the remaining several months of his sentence in prison. But, after every opportunity for discovery

11

and under the facts of the case evidenced, Plaintiff not only cannot maintain the serious allegations initially made; he also cannot maintain any of the remaining claimed rights violations.

The allegation that Plaintiff was in compliance with the terms of his IP/EM Program throughout the course of Defendants' asserted actions were (as Plaintiff was presumably aware), critical to his claims against the Defendants. But reasonable minds could not differ as to the invalidity of that allegation in light of the evidence now of record. Based upon the above, Plaintiff has produced no evidence of a genuine issue on which a jury could find in his favor; therefore, Defendants' Motion for Summary Judgment (ECF No. 78) will be granted.

This Court will enter an Order consistent with this Memorandum Opinion granting said Motion.

                                            /s/ Lisa Pupo Lenihan
                                            Lisa Pupo Lenihan
                                            United States Chief Magistrate Judge

Dated: September 30, 2014